**Booker T. HINES et al., Appellants,**

v.

**CITY FINANCE COMPANY OF EAST-OVER, INC., et al.**

No. 71–1498.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1972.

Decided Nov. 22, 1972.

Miss Marilyn Fisher, Washington, D. C., with whom Miss Maribeth Halloran, Washington, D. C., was on the brief for appellants.

Mr. Harry L. Ryan, Jr., Washington, D. C., with whom Mr. Harry Protas, Chevy Chase, Md., was on the brief for appellees.

Before FAHY, Senior Circuit Judge, and TAMM and WILKEY, Circuit Judges.

FAHY, Senior Circuit Judge:

On January 29, 1971, Booker T. Hines and Cora M. Hines, the appellants, indi-

vidually and on behalf of all others similarly situated,[1] filed an action in the District Court against City Finance Co. of Eastover, Inc., a Maryland corporation, appellee, and against Aaron J. Rehr and James H. Pinkus. The substance of the original complaint was to obtain relief primarily directed to the defendant corporation. Appellants alleged that City Finance made loans to them and to numerous other persons in this jurisdiction requiring the payment of interest in excess of the statutory limit of 8 percent,[2] 28 D.C.Code § 3301 (1967), as amended, (Supp. V, 1972). It was also alleged that appellee corporation was unlawfully doing business in this jurisdiction without the certificate of authority to do so required by 29 D.C.Code § 933 (1967), was illegally loaning money for more than 6 percent without the license required by 26 D.C.Code § 601 (1967), and was illicitly charging credit life insurance without the necessary license in violation of 35 D.C.Code § 1363 (Supp. V, 1972). Appellees Rehr and Pinkus were sued as trustees on the deeds of trust executed as security for the loans made to the Hines.

Appellants sought declaratory judgments that City Finance had violated these statutory provisions and that therefore the loans were null and void and unenforceable. They requested the court to cancel the notes and deeds of trust, and to order an accounting and the return of all monies paid on such notes by the class. Appellants also requested injunctive relief, pendente lite and permanently, to prohibit further collection on all such notes, to restrain the enforcement of all deeds of trusts securing such notes, and to enjoin City Finance from maintaining any suits in the District of Columbia.

On March 23, 1971, appellants filed an Amended Complaint adding allegations set forth in the margin,[3] seeking to bring the activities of the corporate appellee within the prohibitions of 18 U.S. C. § 1962 (the Organized Crime Control Act of 1970).

January 29, 1971, the day the original complaint was filed, was a Friday. The Monday following, February 1, the District of Columbia Reorganization Act of 1970 became effective. This circumstance led the District Court on April 14, 1971, to certify the case to the Superior Court of the District of Columbia. The Court relied upon the following provision of the District of Columbia Code:

> In a civil action begun in the United States District Court for the District of Columbia before the effective date of the District of Columbia Reorganization Act of 1970 (other than an action for equitable relief), where it appears to the satisfaction of the court at or subsequent to any pretrial hearing but before trial thereof that the action will not justify a judgment in excess of $10,000 and does not otherwise invoke the jurisdiction of the court, the court may certify the action to the Superior Court for trial.

11 D.C.Code § 922(a) (Supp. V, 1972). The appeal is from the April 14 order of certification.

Were the allegations of the Amended Complaint accepted as a well pleaded additional cause of action the contention of

---

1. Pursuant to Rule 23, F.R.Civ.P.

2. Appellants allege that they were charged 16.5% interest.

3. "Defendant corporation as principal has received and is receiving income from plaintiffs and other members of the class, derived through collection of unlawful debts incurred in connection with the business of lending money at an interest rate that is at least twice the legal rate. Defendant corporation has directly or in-

directly used or invested the proceeds of such income in the operation of its enterprise which is engaged in and affects interstate commerce. Defendant corporation has, therefore, violated 18 U.S.C. § 1962 (Organized Crime Control Act, Title IX, 1970) for which violation plaintiffs and other members of the class are entitled to equitable relief and to recover threefold their damages and the costs of this suit."

appellants is that notwithstanding the Amended Complaint was filed subsequent to the effective date of the Reorganization Act, the action "otherwise" invoked the jurisdiction of the District Court and, therefore, under 11 D.C.Code § 922(b)(2) (Supp. V, 1972), having been filed within the thirty-month period subsequent to the effective date of the Reorganization Act,[4] was not certifiable to the Superior Court. We need not decide the problems thus presented, for the reasons now to be stated.

■ We think the original complaint itself sets forth "an action for equitable relief" within the meaning of 11 D.C. Code § 922(a) (Supp. V, 1972) and, therefore, having been filed prior to the effective date of the Reorganization Act, was not certifiable to the Superior Court.

■ Several interpretations of "an action for equitable relief" are possible. We do not construe this provision for retention of jurisdiction by the District Court as intended to cover what is essentially a legal action, which seeks equitable relief only of a character incidental to the main legal thrust of the action. On the other hand, if substantial equitable relief is sought as such, the District Court should have retained jurisdiction even though legal relief is also sought. Otherwise, certification of the case to the Superior Court defeats the plain purpose of Congress to have the District Court decide the basis alleged for equitable relief.

In reorganizing the jurisdiction of the local and federal courts in the District of Columbia, Congress, while intending to give "the local courts jurisdiction over all purely local matters," S.Rep.No. 91–405, 91st Cong., 1st Sess., at 5 (1969), recognized "the need for staging the transfer of jurisdiction in an orderly progression, to assure an orderly development of the court receiving the judicial business." Id. at 5. Congress was also aware of the past limitations of the equity jurisdiction of the local courts in civil matters, Hearings on S.1066, S. 1067, S.1214, S.1215, S.1711 and S.2601, before the Senate Comm. on the District of Columbia and the Subcomm. on Improvements in Judicial Machinery, of the Senate Comm. of the Judiciary, 91st Cong., 1st Sess., Pt. 3, 562 at 576–583 (1969) (Report of the Ad Hoc Comm. assigned to Study the History and Jurisdiction of the D.C. Court System), and of the need to expand its equity jurisdiction in civil matters, id. at 1205–1206, 1216–1217 (Statement and remarks of the Hon. Harold H. Greene, C. J., District of Columbia Court of General Sessions). Congress was aware also of the practical problems of manageability: " 'A court is not a commodity that can be produced fullbloom . . .' As I gather, what you [Chief Judge Greene] are proposing here is an increase of better than 50 percent in the size of your court, an increase in the jurisdiction . . . perhaps as much as 100 percent . . . when admittedly you have administrative problems in your own court right now." Id. at 1220 (Remarks of Senator Joseph D. Tydings, Chairman).

It thus appears that, while the legislative history is silent concerning Congress' specific intent in enacting the "equitable relief" exception to transferability, it is nevertheless clear that Congress as part of its plan for an orderly transition did not authorize the certification to the Superior Court of those actions for independent equitable relief which were initiated in the District Court prior to the effective date of the Act, notwithstanding the fact that the Superior Court has obtained jurisdiction over local actions for equitable relief.

---

4. If it is deemed that for the purposes of transfer the time of the Amended Complaint relates back to the date of the original complaint then section 922(a) controls.

The original complaint is not limited to a monetary or other legal claim, with only incidental equitable relief requested. We note first that its subtitle is "For declaratory, injunctive and other equitable relief." In Paragraph 1 it is then alleged that the action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 (1970) (which are concerned with declaratory relief) and "the general equitable powers of the court."

A fair characterization of the various requests for relief, with the appropriate causes of action alleged, would be that appellants sought, because of the violation of 28 D.C.Code § 3301 (1967), as amended, (Supp. V., 1972), the usury provision, and aside from any monetary claims, declaratory and affirmative equitable relief,[5] including cancellation of the notes and deeds of trusts,[6] and injunctions pendente lite and permanently against the enforcement of the notes or execution of the deeds of trust. For violation of the licensing provisions of the D.C.Code, sections 26–601, 29–934 and 35–1363, appellants requested not only declaratory judgments that these provisions have been violated, and, therefore, that the notes were null and void and unenforceable, an accounting and restitution of all monies paid on the allegedly illegal transactions,[7] but also that City Finance be enjoined from maintaining an action in the District of Columbia, since it was doing business there without a license as required by 29 D.C.Code § 934. There is another aspect of the case which lends support to our view that it involves equitable relief. The complaint prays for declaratory judgments that the usury and licensing provisions of the D.C.Code have been violated, which would seem inevitably to involve the possibility of injunctive relief as incident to such judgments, if rendered, so as to prevent future violations. Such relief would be available under the prayer for "such other and further relief" as the court may deem proper.

Thus, the trial court would have been seriously involved in deciding matters involving substantial and independent equitable relief. Isaacson v. House, 216

5. A borrower may elect to seek equitable relief from a usurious transaction, Royall v. Yudelevit, 106 U.S.App.D.C. 1, 268 F.2d 577 (1959), to enjoin the enforcement of transfer of a usurious instrument, Topping v. Trade Bank of New York, 86 F.2d 116 (2d Cir. 1936) and Wilhelmson v. Bentley, 25 Neb. 473, 41 N.W. 387 (1889), to enjoin the foreclosure or sale of a mortgage or deed of trust securing the usurious loan, Anderson v. Curls, 309 S.W.2d 692 (Mo.App. 1958), to order the cancellation of such notes and deeds of trust, Cook v. Young, 225 Ga. 26, 165 S.E.2d 727 (1969) and to restore to the borrower what the lender may not equitably retain, Associated Stores, Inc. v. Industrial Loan & Investment Co., 202 F.Supp. 251 (D.N.C. 1962), cert. denied, 379 U.S. 830, 85 S.Ct. 60, 13 L.Ed.2d 39 (1964) and Plitt v. Kaufman, 188 Md. 606, 53 A.2d 673 (1947).

6. The complaint sought cancellation of deeds of trust securing loans of defendant corporation to plaintiffs, and on this basis alleged that title to real estate was involved. Prior to the April 14 order of certification, however, the deeds of trust on the property of the Hines were released of record. Assuming arguendo that the release of the deeds of trust securing the loans to the individual plaintiffs mooted any part of the case based on the theory that it involved title to real estate insofar as the individual plaintiffs were concerned, there is the question to be decided whether in this respect the action could still be maintained on behalf of the class, of which the individual plaintiffs were members when the action was initiated. See Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 657 (4th Cir. 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); and Vaughan v. Bower, 313 F.Supp. 37, 40 (D.Ariz.), affirmed, 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970). And see United States v. W. T. Grant Co., 345 U.S. 629, 632–633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

7. See, Miller v. Peoples Contractors, Ltd., 257 A.2d 476 (D.C.App.1969) in which the court ordered full restitution as a penalty for a violation of a licensing requirement.

**434**

Ga. 698, 119 S.E.2d 113 (1961) and McNish v. General Credit Corp., 164 Neb. 526, 83 N.W.2d 1 (1957); see also, Hill v. Hawes, 79 U.S.App.D.C. 168, 144 F.2d 511 (1944) and the cases cited in footnote 5, *supra*. Under the predecessor transfer provisions [8] the requests for equitable relief involved in this case would have been sufficient to preclude certification of the action to the Court of General Sessions.[9] We think Congress intended that such actions if begun in the District Court prior to the effective date of the Reorganization Act should remain there, notwithstanding the fact that the Superior Court now has jurisdiction in equity.

We feel obliged to give effect to the jurisdictional dividing line laid down by Congress. We add that the original complaint carries with it the Amended Complaint insofar as certification is concerned, for the latter cannot be separated from the former on that issue. Jurisdiction of the case being retained in the District Court by reason of the original complaint, it follows that the Amended Complaint, which in its substantive allegations stated no cause of action within the exclusive jurisdiction of the Superior Court, was not, separately from the original complaint, certifiable to that court.

Since the District Court will retain jurisdiction the motion of plaintiffs for an Order Certifying Class Action under Rule 23(b)(2) or (b)(3), F.R.Civ.P., remains to be acted upon by that court, see note 6, *supra*, along with all else still to be decided.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

8. The predecessor transfer provisions contained the same exception to certification. P.L. 88–241, § 1, 77 Stat. 490 (1963); P.L. 88–60, § 3, 77 Stat. 78 (1963); P.L. 87–873, § 3, 76 Stat. 1171 (1962); Act of July 26, 1956, ch. 744, § 1, 70 Stat. 676; and Act of April 1, 1942, ch. 207, § 5(a), 56 Stat. 193.

9. *See* Geesling v. Fletcher, 154 A.2d 347 (D.C.Mun.App.1959) in which the court held that an action for injunctive relief which did not involve more than $3000.00 was nevertheless not transferable from the District Court to the Municipal Court where the provision for certification excepted actions for equitable relief.