59859. WILLIAMS v. FIRST BANK & TRUST COMPANY
et al.
59860. HENDERSON v. FIRST BANK & TRUST COMPANY
et al.
59861. BROWN v. FIRST BANK & TRUST COMPANY et al.
59862. FIRST BANK & TRUST COMPANY v. WILLIAMS
et al.

BANKE, Judge.

The First Bank & Trust Company, a state-chartered banking corporation, sued defendants Williams, Henderson, and Brown to collect on a "consumer collateral installment note." Williams and Brown had signed the note as co-makers, and Henderson had signed as a surety. The bank declared a default and accelerated the unpaid balance after the defendants failed to meet several payments.

The case was tried before a jury, and a verdict was returned for the full amount of the accelerated balance as calculated by the bank, to wit: $44,477.71. The jury also awarded $6,648.50 interest on that amount, calculated at 8 percent per annum from the date of acceleration to the date of trial, and $7,668.93, or 15 percent of the sum of those two figures, as statutory attorney fees.

The defendants contend on appeal that the amount sought and obtained by the bank was usurious because the bank used what is known as the Rule of 78's to calculate the rebate of unearned interest on acceleration, rather than the pro rata method. The trial court originally rejected this contention and refused to submit it to the jury. However, when the issue was again raised in post trial motions for judgment notwithstanding the verdict and for new trial, the court reconsidered and ruled that the use of the Rule of 78's to calculate unearned interest was unlawful. The $6,648.50 interest award was thereupon stricken from the judgment, and the award of attorney

fees was correspondingly reduced from $7,668.93 to $6,671.66, although, as noted previously, the $6,648.50 interest award contained in the verdict represented not the interest contained *in* the accelerated balance but rather interest *on* the accelerated balance from the date of acceleration to the date of trial. The defense motions for new trial and for judgment notwithstanding the verdict were otherwise denied. From this order the defendants each appealed, and the bank cross appealed.

The note was executed on March 31, 1973. The stated principal, or "amount financed," was $60,830. It was repayable over an 8-year period in 96 monthly installments of $887. "Add-on" interest was included in the installments at the rate of 5 percent per annum, resulting in a "finance charge" of $24,322 and a "total of payments" of $85,152. The note provided that in the event of prepayment, interest would be refunded in accordance with the "sum of the digits method," otherwise known as the Rule of 78's. However, there was no provision as to how interest would be refunded in the event of default and acceleration.

The bank declared a default and accelerated the balance after 46 of the 96 payments had fallen due. A total of 40 payments had been made, leaving six payments in arrears and 50 payments to be accelerated. The bank determined that the total of the accelerated payments and the past-due payments was $51,446, which represents 58 installments of $887 and is therefore inconsistent with the uncontroverted testimony that 40 payments had been made. In any event, from this $51,446 the bank deducted unearned interest in the amount of $7,163.29, computed in accordance with the Rule of 78's, and added $195 in accrued late charges to obtain the total of $44,477.71 alleged to be due on acceleration.

At the time the loan was made, the maximum interest allowable on installment notes was 6 percent per annum "add-on," that is, 6 percent of the entire amount financed for the entire term of the loan. See Ga. L. 1937, p. 463 (former Code § 57-116). *Held:*

1. We reject the bank's contention that because the defendants failed to enumerate as error the denial of their motions for new trial no question is presented for review on appeal. Such has not been the rule in this court since 1972. See *Slay v. Brady,* 126 Ga. App. 249 (1) (190 SE2d 445) (1972); *Checker Cab Co. v. Fedor,* 134 Ga. App. 28 (1) (213 SE2d 485) (1975). Accord *Gold Kist, Inc. v. Stokes,* 235 Ga. 643 (1) (221 SE2d 49) (1975).

2. We also reject the bank's contention that usury cannot be asserted as a defense but must be asserted either as a counterclaim or in a separate suit. See *Thomas v. Estes,* 139 Ga. App. 738 (229 SE2d 538) (1976), citing *Lott v. Peterson,* 23 Ga. App. 458 (98 SE 361)

(1919). The court's language at page 872 of *Thomas v. Universal Guardian Corp.*, 144 Ga. App. 869 (243 SE2d 101) (1978) does not hold to the contrary but is merely an observation that the law *allows* the debtor to raise the issue of usury in a counterclaim.

3. The defendants contend that in addition to its use of the Rule of 78's to calculate unearned interest on acceleration, the bank also committed usury by imposing a $600 "service charge" for which it rendered no service. "[T]his court has uniformly and consistently held that a lender's charge for service, when no service was in fact rendered or to be rendered the borrower, is a charge for the use of the money advanced and is therefore interest." *First Fed. &c. Assn. v. Norwood Realty Co.*, 212 Ga. 524 (2), 531 (93 SE2d 763) (1956). We agree with the defendants that there is no evidence the bank performed any service in return for the $600. One of the bank officers who testified on the issue stated that he did not know what the fee was for. The other stated, "I'm having to assume what this service charge went for, but what I feel it probably went for was inspections [of collateral]. . . . " These statements prove nothing. Thus, we must treat the $600 as a reduction of the amount of credit extended. However, we do not agree with the defendants that this automatically renders the loan usurious. Interest was added on at the rate of 5 percent per annum; whereas, as indicated previously, the maximum such interest charge allowable at the time was 6 percent. The exaction of the $600 service charge did not raise the effective add-on interest rate above 6 percent, and thus no usury resulted from it. Accord, *Knight v. First Fed. &c. Assn.*, 151 Ga. App. 447 (1) (260 SE2d 511) (1979).

4. We now turn to the defendants' contention that the use of the Rule of 78's to refund unearned interest rendered the bank's claim usurious.

"To constitute usury it is essential that there be, at the time the contract is executed, an intent on the part of the lender to take or charge for the use of money a higher rate of interest than that allowed by law. *Bellerby v. Goodwyn*, 112 Ga. 306 (37 SE 376). If the intent be to take only legal interest, a slight and trifling excess, due to mistake or inadvertence, will not taint the transaction with usury. *Rushing v. Willingham*, 105 Ga. 166 (31 SE 154)." *Loganville Banking Co. v. Forrester*, 143 Ga. 302, 305 (84 SE 961) (1915). See also *Cook v. Young*, 225 Ga. 26, 29 (165 SE2d 727) (1969). Where a note calls for a usurious rate of interest on its face, a usurious intent will be implied, although the lender may negate it. See *Holt v. Rickett*, 143 Ga. App. 337, 340 (238 SE2d 706) (1977). Similarly, "where the facts show without dispute a device to extract more than the legal rate of interest for the use of money such question need not be submitted to the

jury." *Cook v. Young,* supra, at 29. Accord, *Harrison v. Arrendale,* 113 Ga. App. 118, 123 (147 SE2d 356) (1966).

In *Credithrift of America v. Morris,* 147 Ga. App. 827 (250 SE2d 565) (1978), this court held that an installment note which provides for use of the Rule of 78's to rebate unearned interest on acceleration is usurious if application of the provision would permit collection of interest beyond the statutory limit. Accord, *Cook v. First Nat. Bank of Atlanta,* 130 Ga. App. 587 (2) (203 SE2d 870) (1974); *Goodwin v Trust Co. of Columbus,* 144 Ga. App. 787, 790 (3) (242 SE2d 302) (1978). As indicated previously, the note under consideration in this case did not specify how interest was to be rebated in the event of default and acceleration. However, the evidence shows without dispute that the bank used the Rule of 78's to compute the amount of its claim, and the evidence also shows without dispute that this was done not by mistake or inadvertence but as the result of the bank's official policy. Indeed, the bank continues to urge on appeal that it is entitled to rebate unearned interest in accordance with the Rule of 78's, despite the note's silence on the issue.[1] Therefore, we must conclude that the bank acted with usurious intent, if in fact the accelerated balance sued for includes more interest than the law allowed.

That the claim does in fact include an excessive amount of interest may be seen as follows: The bank represented to the jury that the total of the remaining payments and the past-due payments on the date of acceleration was $51,446. Applying the Rule of 78's, it determined that $7,163 of this amount represented unearned interest and gave the appellants a credit for it. However, interest actually comprised about 28.6 percent of each payment (calculated by dividing the total stated interest charge of $24,322 by the total of payments of $85,152). Thus, had the bank made a pro rata rebate of unearned interest, the amount of the rebate would have been $14,714 rather than $7,163.[2] Had interest been charged at the maximum then allowable rate of 6 percent per annum (Ga. L. 1937, p. 463), the additional interest allowable over the first 46 months of the loan (the

---

[1] In light of the *Credithrift* case, supra, this is indeed an unusual postion for the bank to take. The only support advanced for it is the argument that use of the Rule of 78's merely reflects the fact that more interest is earned during the early phases of an installment loan, when the principal balance is higher, than in the later phases. Whatever merit this argument might have where the interest has been computed on an as-earned basis, it has no relevance to a transaction such as this one, where the interest has been charged on the entire principal throughout the entire term of the loan.

[2] The amount on which the rebate of unearned interest should have been

period prior to acceleration) would have been only about $2,332 (.01 x 8 x 46/96 x $60,830). Thus, the refund of only $7,163 clearly resulted in an attempt to retain more interest than Code Ann. § 57-116 allowed.[3]

It follows that the bank must forfeit the entire interest on the transaction pursuant to Code § 57-112. See *Kent v. Hibernia Svgs. &c. Assn.,* 190 Ga. 764 (4, 5) (10 SE2d 759) (1940); *Taylor v. Merchants Mut. Credit Corp.,* 100 Ga. App. 634 (112 SE2d 188) (1969). The judgment of the trial court is accordingly vacated with direction that a new judgment be entered for the amount of the unpaid principal, plus accrued late charges, statutory interest from the date of acceleration to the date of judgment, and statutory attorney fees. Accord, *Taylor v. Merchants Mut. Credit Corp.,* supra. We find the unpaid principal to be $24,750, calculated by taking the stated amount financed, i.e., $60,830, subtracting from it the $600 "service fee" for which no service was performed, (see Division 2, supra) and subtracting from that figure the 40 installments ($35,480) actually paid.

5. Each defendant contends that he was not given adequate notice of the bank's intention to collect statutory attorney fees. See generally Code Ann. § 30-506. Substantial compliance with the statute is all that is required. *Gen. Elec. Credit Corp. v. Brooks,* 242 Ga. 109, 114 (249 SE2d 596) (1978). Although defendant Williams complains that he no longer lived at the residence to which the bank mailed his notice, he admitted that this was where he lived when the note was executed and that he never informed the bank that he had moved. Furthermore, a copy of the notice letter was attached to the complaint, and this met the statutory requirement. See *New Home Prod. v. Commercial Plastics & Supply Corp.,* 141 Ga. App. 199 (3) (233 SE2d 45) (1977); *Shier v. Price,* 152 Ga. App. 593 (2) (263 SE2d 466) (1979). The notices were not defective because they failed to state the amount the bank claimed to be due. Accord, *Shier v. Price,* supra. Nor does the fact that the bank sought more money than it was

---

calculated was not the sum of the past-due payments and the remaining payments but only the amount of the 50 remaining payments, or $44,350. The 28.6 percent pro rata rebate on this figure would be $12,684.

[3]The amount which the bank was entitled to demand on acceleration under the terms of the contract was the sum of the past-due payments, the accrued late charges, and the principal contained in the remaining installments. The amount of the six past-due payments was $5,322. The amount of the accrued late charges was $195. The amount of principal contained in the 50 remaining payments was 50/96ths of $60,830, or $31,682. The total amount due on acceleration, pursuant to the terms of the note, was thus $37,199 rather than the $44,477.71 which the bank actually sought.

entitled to collect render the notice defective. The defendants do not dispute that the unpaid principal is due, yet they have never tendered it. See *Kellos v. Parker-Sharpe, Inc.,* 245 Ga. 130, 134 (263 SE2d 442) (1980); *Taylor v. Merchants Mut. Credit Corp.,* supra, at 637.

6. Defendant Henderson argues that the court erred in not finding that the bank had increased his risk and thus discharged him as a surety pursuant to Code § 103-203 by allowing the collateral to be dissipated after default was declared. However, we are not directed to any portion of the record or transcript where such an argument was advanced below, and we have been unable to discover any such argument in our own review of the record and transcript. Accordingly, this enumeration of error will not be considered. See *Phillips v. State Farm &c. Ins. Co.,* 121 Ga. App. 342 (2) (b) (173 SE2d 723) (1970). See also Rule 15 (c) (3) of the Court of Appeals (Code Ann. § 24-3615 (c) (3). We note, however, that Code § 103-203 was superseded in 1924 by Code § 14-902 insofar as it related to the discharge of persons secondarily liable on negotiable instruments. The current law governing the subject is set forth in Ga. U.C.C. § 3-306 (Code Ann. § 109A-3—306).

7. In view of our determination that the record establishes the amount of the defendants' liability on the notes as a matter of law, the issues raised in the cross appeal have been rendered moot.

*Judgment vacated and remanded with direction. McMurray, P. J., and Smith, J., concur.*

ARGUED MAY 7, 1980 — DECIDED JUNE 16, 1980.

*Irma B. Glover,* for appellant (Case No. 59859).
*John H. Moore, Henry Angel, William D. Perkins, Joseph C. Parker,* for appellees.
*Henry Angel, William E. Turnipseed,* for appellant (Case No. 59860).
*John H. Moore, Irma B. Glover, William D. Perkins, Joseph C. Parker,* for appellees.
*William D. Perkins,* for appellant (Case No. 59861).
*John H. Moore, Irma B. Glover, Henry Angel, Joseph C. Parker,* for appellees.
*John H. Moore, Joseph C. Parker,* for appellant (Case No. 59862).
*Irma B. Glover, Henry Angel, William D. Perkins,* for appellees.